IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VICTOR F. F.,[1] )
)
         Petitioner, )
)
vs. ) Civil No. 17-cv-977-CJP[2]
)
COMMISSIONER OF SOCIAL SECURITY, )
)
         Respondent. )
)

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in November 2014 alleging his disability began on August 29, 2014. (Tr. 16). After holding an evidentiary hearing, ALJ George M. Bock denied the application on March 8, 2017. (Tr. 16-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the Court's recently adopted practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This matter was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 24.

1

## Issue Raised by Plaintiff

Plaintiff raises the following point:

1. The ALJ did not have sufficient information to intelligently determine the severity of plaintiff's mental impairments, and thus, failed to fully and fairly develop the record.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the

impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is

important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Bock followed the five-step analytical framework described above. He determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date and he was insured for DIB through December 31, 2019. At step two, ALJ Bock determined plaintiff had severe impairments of degenerative joint disease of the lumbar and cervical spine, osteoarthritis of the hands and knees, and obesity. He determined that plaintiff's mental impairments, depression and anxiety,

4

were medically determinable though non-severe.

ALJ Bock concluded that plaintiff had the RFC to

> …lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally, sit for six to eight hours out of an eight-hour workday, and stand and walk for a total of six hours out of an eight-hour workday with normal breaks; he could perform all postural activities occasionally except he should never kneel, crawl, or climb ladders, ropes, or scaffolds; he should never work at unprotected heights or around hazards; he should not perform overhead work; and he could not forcefully grasp bilaterally, but ordinary manipulation is not limited.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was able to do his past work as a line supervisor. Alternatively, continuing to step five, ALJ Bock found that plaintiff has acquired transferrable skills and was also able to do other skilled jobs at the light exertional level.

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by Plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born in November 1958 and was fifty-five years old in August 2014. (Tr. 163).

In February 2015, plaintiff reported no problems with his personal care. He did not need reminders to take care of personal needs or grooming. He went outside every day and drove a car. He was able to pay bills and handle a checkbook. He said that he could pay attention for two hours. He was able to finish what he started and was able to follow both written and spoken instructions well. He reported having

no problems with people in general, and that he was never fired or laid off because of problems getting along with others. He said he did not handle stress and changes in his routine well, and that he did not like to leave his home "since being diagnosed with many problems." He did not like to leave home because he was not sure he would have a "comfortable place to sit." (Tr. 208-215).

2. **Evidentiary Hearing**

Plaintiff was represented by counsel at the October 2016 hearing. (Tr. 35).

ALJ Bock asked plaintiff about his work history, focusing on the duties he had while performing his three past jobs. (Tr. 37-38). ALJ Bock's next and final question for plaintiff was broad; he asked plaintiff what his "biggest problem" is that prevents him from working. Plaintiff responded that his biggest problem is "walking around," and the resulting pain. (Tr. 39).

Plaintiff testified that his primary care physician, Dr. Khan, treated his depression with Effexor and his anxiety with tranquilizers. Plaintiff said his depression and anxiety have gotten worse over time, and that prior to this evidentiary hearing, his Effexor dosage was increased again. (Tr. 40-41).

Plaintiff's counsel asked which was worse, his "rheumatoid arthritis" or his depression and anxiety. Plaintiff answered, "The rheumatoid arthritis is pretty bad." (Tr. 42).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could do plaintiff's past work as a line supervisor. She also testified that he had acquired transferrable skills and could do other skilled jobs at the light

6

exertional level. (Tr. 46-49).

3. **Medical Records**

Plaintiff received regular treatment for his physical conditions from his primary care physician, Jawad Khan, M.D. In August 2014, plaintiff told Dr. Khan that he had been run over by a fork lift at work and he planned to "step down from his job and go on to disability." (Tr. 290). It is not necessary to review the treatment for physical complaints in detail. Dr. Khan also treated plaintiff for anxiety disorder due to a general medical condition and depression.

In October 2014, Dr. Khan noted that plaintiff had been taking Effexor at thirty-seven and one-half (37.5) milligrams for some time. However, at this visit, Dr. Khan increased his Effexor to seventy-five (75) milligrams per day. He refilled Plaintiff's clonazepam. (Tr. 288).

In May 2015, Dr. Khan referred plaintiff to Panduranga R. Kini, M.D., a specialist in psychiatry and neurology. Plaintiff complained of balancing problems, a tremor of his right hand, and tingling in his toes. Dr. Kini noted that plaintiff had a tremor in his right hand. He thought it was probably non-neurological in origin and likely a physical manifestation of plaintiff's anxiety. He suggested that plaintiff discontinue nortriptyline, decrease his clonazepam by half, and, if his depression did not improve in one week, that plaintiff should begin an increased Effexor dosage. (Tr. 338-39).

At a follow-up visit in June 2015, plaintiff told Dr. Kini his depression was better on the increased dosage of Effexor. He had tried stopping his anxiety medication, but he became more anxious. Dr. Kini asked him to return in 4 to 6

7

months. (Tr. 390-391). There are no further records from Dr. Kini.

Plaintiff continued to see Dr. Khan through September 2016. He reported "depressive symptoms" on some, but not all, visits with Dr. Khan, and Dr. Khan continued to prescribe medication. His office notes generally do not include observations from mental status exams. (Tr. 418-522, 495-500). Dr. Khan did note he had a flat affect on several visits. (Tr. 289, 483, 485, 497).

4. **Consultative Physical Examination**

In March 2015, Vittal Chapa, M.D., performed a consultative physical examination. Dr. Chapa briefly assessed plaintiff's "Mental Status." He noted that plaintiff was alert and oriented; did not seem to have any delusions or hallucinations; could answer questions appropriately; and was in good contact with reality. (Tr. 333-34).

5. **State Agency Consultants' Review**

In April 2015, acting as a state agency consultant, M.W. DiFonso, Psy.D., reviewed the records and determined that plaintiff's sole medically determinable mental impairment was anxiety and that it was non-severe. She opined that plaintiff's anxiety only resulted in mild functional limitations without repeated episodes of decompensation. (Tr. 57-58).

Five months later, Larry Kravitz, Psy.D., reconsidered and affirmed Dr. DiFonso's initial determination. (Tr. 72-73).

## Analysis

Plaintiff argues that the ALJ "did not have sufficient information to intelligently determine the severity of Plaintiff's mental impairments, and thus, failed to fully and

8

fairly develop the record." Doc. 17, p. 1. He asserts a number of arguments in support of this point, none of which are persuasive.

First, he argues that the state agency consultants' mental RFC assessments were outdated because they did not see Dr. Kini's note in which Dr. Kini suggested that plaintiff's hand tremor was the result of anxiety. He cites *Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016). This argument is factually incorrect, as the second state agency consultant reviewed the record in September 2015, and Dr. Kini's May 2015 note was part of the file at that time. See. Tr. 68. In any event, *Stage* is distinguishable.

In *Stage*, the Seventh Circuit held that the ALJ erred in accepting a reviewing doctor's opinion where the reviewer did not have access to later medical evidence containing "significant, new, and potentially decisive findings" that could "reasonably change the reviewing physician's opinion." *Stage*, 812 F.3d at 1125. In a later case, the Seventh Circuit reiterated the rule. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018). See also, *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018).

This case is not like *Stage* and *Moreno* because Dr. Kini's note about plaintiff's tremor is not comparable to the new evidence in those cases. In *Stage*, new evidence indicated, for the first time, that the plaintiff needed a knee replacement. In *Moreno*, the new evidence consisted of a treating psychologist's office notes which documented "significant and new developments" in plaintiff's mental health. Here,

in contrast, Dr. Kini's note is of much less significance. Plaintiff does not explain why Dr. Kini's note about his tremor would be likely to change the state agency reviewers' opinions.

Plaintiff also argues that the ALJ erred in relying on the lack of mental health treatment without inquiring into the reason for the lack of treatment. However, he does not argue that he was unable to obtain treatment because of lack of insurance. In fact, the medical records indicate that he had health insurance. See, e. g., Tr. 401, 445, 449, 495.

Plaintiff suggests that the ALJ erred in considering his daily activities. He argues that "an ability to engage in sporadic activities does not equate with the ability to work eight hours a day, five consecutive days of the week." Document 17, p. 12. The Seventh Circuit has cautioned against equating the ability to engage in limited daily activities with an ability to work. *Moore v. Colvin*, 743 F. 3d 1118, 1126 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). This does not mean, as plaintiff seems to think, that the ALJ was prohibited from remarking on his activities.

Plaintiff does not argue that the ALJ misstated his activities. The ALJ was required to consider plaintiff's daily activities. 20 C.F.R. § 404.1529. He did not impermissibly equate plaintiff's activities with an ability to work full-time. Rather, he concluded that plaintiff's activities such as managing his own finances, watching television, driving a car, and preparing meals indicated that he had, at most, mild limitations in the "paragraph B" criteria. Further, the ALJ noted that plaintiff and his wife both reported that he finished what he started and was able to follow both

written and spoken instructions, and that plaintiff reported that he had no problems getting along with others. Tr. 19-20.

Plaintiff argues that the ALJ erred in not developing the record by recontacting his treatment providers or obtaining a consultative psychological exam. He does not suggest that there were existing records that the ALJ failed to gather; rather, he suggests that the ALJ should have done more to create additional evidence.

It was plaintiff's burden to submit sufficient medical evidence to establish the severity of his impairments. See 20 C.F.R. § 405.1512(a), (c); *Scheck v. Barnhart*, 357 F.3d 697, 701-02 (7th Cir. 2002). It is generally within the ALJ's discretion to decide whether the record needs further development. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("This court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather..."). "[T]he need for additional tests or examinations will normally involve a question of judgment, and we generally defer to the ALJ's determination whether the record before her has been adequately developed. Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence indicating that further development is required." *Wilcox v. Astrue*, 492 Fed.Appx. 674, 678, 2012 WL 3590894, *3 (7th Cir. 2012) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997) ("when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.")).

Lastly, plaintiff argues generally that the ALJ erred by failing to include nonexertional limitations caused by his mental impairments. However, he points to no evidence other than his own testimony that suggests that he had such limitations. The ALJ was, of course, not required to accept his testimony. "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). Plaintiff has not challenged the ALJ's credibility determination here.

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). ALJ Bock's decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record, the Court is convinced that ALJ Bock committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for social security disability benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: January 8, 2019.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**